**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

                Plaintiff,

        v.

JAMIL KING,

                Defendant.

**Criminal Action No. 23-0240 (ES)**

**OPINION**

SALAS, DISTRICT JUDGE

On May 31, 2024, a jury found Defendant Jamil King guilty of possession with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (D.E. No. 61). Before the Court is Defendant's motion to vacate the judgment of the jury and for a new trial pursuant to Federal Rule of Criminal Procedure 33(a). (D.E. No. 62 ("Mov. Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument pursuant to Local Civil Rule 78.1, which is applicable to criminal cases under Local Criminal Rule 1.1. *See* L. Civ. R. 78.1(b); L. Crim. R. 1.1. For the following reasons, the Court **DENIES** Defendant's motion.

## I.        BACKGROUND

On or about March 24, 2023, a federal grand jury sitting in Newark, New Jersey returned an Indictment charging Mr. King with possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (D.E. No. 15 ("Indictment") at 1). The Indictment alleged that on or about July 8, 2022, in Hudson County, in the District of New Jersey, Mr. King knowingly and intentionally possessed with the intent to distribute a quantity of a mixture and substance containing a detectable amount of cocaine. (*See id.*).

A jury trial in this case began on May 28, 2024 and concluded on May 31, 2024. (*See* D.E. Nos. 64–67). To support its case, the Government called as witnesses law enforcement officers, DNA expert witnesses, and a cooperating witness, and also presented video and documentary evidence. (*See* D.E. No. 65 ("Tr. of Jury Trial Vol. I") & D.E. No. 66 ("Tr. of Jury Trial Vol. II")). A summary of the evidence produced at trial is provided below to set the backdrop for Mr. King's motion.

In late June and early July of 2022, the Jersey City Police Department—including the Jersey City Police Intelligence Unit, the Street Crimes Unit, and Emergency Services Unit—were in the process of investigating Defendant Jamil King. (Tr. of Jury Trial Vol. I. at 112:23–114:12). As a result of information developed during the course of law enforcement's investigation, which included surveillance and the utilization of confidential sources, among other investigative techniques, law enforcement obtained a search warrant for residences located at (i) 74 Van Nostrand Avenue in Jersey City, New Jersey; and (ii) 99 Rutgers Avenue in Jersey City, New Jersey. (*Id.* at 114:15–23). According to Sergeant Ryan Macaluso, a sergeant at the Jersey City Police Department who oversaw the investigation of Mr. King, law enforcement understood that Mr. King resided at 74 Van Nostrand Avenue with his wife, Donisha King. (*Id.* at 109:17–114: 14 & 120:25–123:23). Law enforcement also understood that Destiny Dutton, the daughter of Donisha King, resided at 99 Rutgers Avenue. (*Id.* at 123:24–124:6).

On or about July 8, 2022, law enforcement executed the search warrants at 74 Van Nostrand Avenue and 99 Rutgers Avenue. (*Id.* at 124:7–10). Before the search warrants were executed, the Jersey City Police Emergency Services Unit conducted a briefing session with the Intelligence Unit and Street Crimes Unit to discuss a plan for executing the respective warrants. (*Id.* at 124:13–20). At this briefing, law enforcement was shown closed circuit television

("CCTV") footage indicating that Mr. King had been observed near the area of 74 Van Nostrand Avenue between 8:00 p.m. to around approximately 9:20 p.m. on the night of July 8, 2022, wearing a bright, yellow-colored sweatshirt, black shorts, and Nike sneakers. (*Id.* at 124:21–130:12, 176:6–19 & 191:5–8). At approximately 9:17 p.m., video footage showed Mr. King entering a white Hyundai with Jeremiah Payne, one of his associates. (*Id.* at 129:4–131:9). The two then drove eastbound in the direction of 74 Van Nostrand Avenue. (*Id.* at 131:15–20). Once law enforcement officials observed Mr. King driving in the direction of 74 Van Nostrand Avenue, law enforcement decided to station vehicles near the Van Nostrand residence to monitor Mr. King's movements. (*Id.* at 132:22–133:15). As such, according to Sergeant Macaluso, if Mr. King or the white Hyundai had continued past 74 Van Nostrand Avenue, an officer would have been positioned to observe Mr. King's movements and would have alerted other law enforcement agents of that movement. (*Id.*). However, Sergeant Macaluso testified that no officer observed the white Hyundai or Mr. King proceed past 74 Van Nostrand Avenue. (*Id.* at 133:16–18).

At approximately 9:40 p.m., law enforcement agents were dispatched to execute the search warrants at 99 Rutgers Avenue and 74 Van Nostrand Avenue.[1] (*Id.* at 124:7–10 & 132:8–18). Sergeant Macaluso testified that when he arrived at 74 Van Nostrand Avenue to execute the search warrant at that residence, he observed the same white Hyundai that Mr. King had been observed entering into about twenty minutes before, double parked in front of the residence. (*Id.* at 134:2–10). However, though no officer observed Mr. King proceed past 74 Van Nostrand Avenue, only Jeremiah Payne was observed in the vehicle. (*Id.* at 135:9–136:2). Sergeant Macaluso then testified that after he arrived at 74 Van Nostrand Avenue, a neighbor approached him and told him

---

[1]    According to Officer Gary Hauman, an officer with the Jersey City Street Crimes Unit, law enforcement officers did not find anything during their search of 99 Rutgers Avenue. (Tr. of Jury Trial Vol. I. at 174:5–16 & 176:20–24).

that he observed "the big guy r[u]n upstairs." (*Id.* at 138:23–139:3). Sergeant Macaluso explained that he understood "the big guy" to be referring to Mr. King. (*Id.*). After law enforcement cleared the area outside of 74 Van Nostrand Avenue, officers proceeded inside the residence to execute the search warrant. (*Id.* at 148:2–4). According to Officer Gary Hauman, an officer with the Jersey City Street Crimes Unit, his search of the residence revealed a plastic bag subsequently confirmed to contain about 50 grams of cocaine, which was located within a pair of men's yellow sweatpants that matched the yellow sweatshirt that Mr. King had been observed wearing earlier that evening. (*Id.* at 148:5–23, 174:5–16 & 179:1–181:4). According to Sergeant Macaluso, from his experience in narcotics investigations, the amount of cocaine that was located in the yellow sweatpants was consistent with distribution weights. (*Id.* at 151:8–152:15). Detective Keith Colon of the Jersey City Police Department likewise testified that, based on his experience from working in narcotics investigations, the quantity of cocaine recovered in the yellow sweatpants far exceeded any weight of cocaine that would be kept for personal use alone. (*Id.* at 189:6–15 & 194:25–195:6). During the search of the residence, Officer Gary Hauman also identified a mailing document that had been addressed to Jamil King at 74 Van Nostrand Avenue. (*Id.* at 152:24–153:4 & 170:17–25).

Based on the aforementioned facts, law enforcement applied for and obtained a search warrant to collect a buccal DNA sample from Mr. King so that law enforcement could determine whether Mr. King's genetic material was linked to the yellow sweatpants. (*See id.* at 197:5–198:21). After law enforcement obtained the buccal DNA sample from Mr. King, they sent the buccal DNA sample and the yellow sweatpants to the New Jersey State Police Laboratory for testing. (*Id.*). Gabriella Soto, a forensic scientist with the New Jersey State Police Office of Forensic Sciences, received the sweatpants for testing and was responsible for identifying whether

4

the sweatpants contained any biological fluids.  (Tr. Of Jury Trial Vol. II at 291:18–295:5).  After analyzing the sweatpants, Ms. Soto testified that she located a stain on the sweatpants that tested positive for blood and sent that stain to the DNA Unit for further analysis.  (*Id.* at 295:9–297:12).  Riza Ysla, a forensic scientist in the DNA Unit of the New Jersey State Police Laboratory, later performed DNA testing on the stain that had been isolated from the yellow sweatpants.  (*Id.* at 305:3–312:11).  According to Ms. Ysla, those testing results revealed that the yellow sweatpants contained Mr. King's DNA.  (*Id.* at 312:12–313:15).

Finally, during trial, the jury heard testimony from a cooperating witness, Walter Kirkland, regarding an interaction that his now-deceased wife had with Mr. King.  (*Id.* at 266:23–290:19).  Mr. Kirkland began by explaining to the jury that he is currently pending sentencing for federal drug charges, including for conspiracy to distribute and possess with intent to distribute controlled substances.  (*Id.* at 266:24–267:7).  Mr. Kirkland explained that he was arrested in June of 2023 because of his own drug trafficking activities—specifically, a drug trafficking conspiracy wherein he and his now deceased wife would allow their apartment to be used as a stash house for narcotics, and their co-conspirator, "Boonka," would supply him and his wife with drugs that he and his wife would then sell.  (*Id.* at 267:12–268:19).  Mr. Kirkland then testified that at one point in the summer of 2022, his wife informed him that she had just been approached by Mr. King, who had come to the door of their residence and proposed that she and Mr. Kirkland cut out Boonka and enter into a new arrangement with Mr. King, wherein Mr. King would replace Boonka as their supplier.  (*Id.* at 275:2–276:20 & 289:11–21).  After presenting the aforementioned evidence, the Government rested its case on May 30, 2024.  (*Id.* at 325:2).  Following the Government resting its case in chief, Mr. King also rested.  (*Id.* at 325:3–5).

On May 31, 2024, the jury found Mr. King guilty of possession with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (D.E. No. 61).  On June 13, 2024, Mr. King filed the instant motion to vacate the judgment of the jury and for a new trial pursuant to Federal Rule of Criminal Procedure 33(a).  (*See* Mov. Br.).  On June 26, 2024, the Government filed an opposition and on July 8, 2024, Mr. King filed a reply.  (D.E. No. 68 ("Opp. Br."); D.E. No. 69 ("Reply")).

## II.    LEGAL STANDARD

### A.    Motion for a New Trial

A defendant may move for a new trial pursuant to Federal Rule of Criminal Procedure 33, which provides in pertinent part that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  The defendant "bears the burden of persuading the trial court that the interest of justice requires the grant of a new trial."  *United States v. Ray*, Crim. No. 12-0058, 2016 WL 5787345, at *3 (M.D. Pa. Oct. 4, 2016) (quoting *United States v. Hammer*, 25 F. Supp. 2d 518, 534 (M.D. Pa. 1998)).  "[M]otions for new trials are disfavored and are only granted with great caution and at the discretion of the trial court."  *United States v. Martinez*, 69 F. App'x 513, 516 (3d Cir. 2003) (citing *United States v. Allen*, 554 F.2d 398, 403 (10th Cir. 1977)).  "A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it 'believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'"  *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (quoting *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994)).  "Thus, '[m]otions for a new trial based on the weight of the evidence are not favored.  Such motions are to be granted sparingly and only in exceptional cases.'"  *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (alteration in

original) (quoting *Gov't of V.I. v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)).  When considering a Rule 33 motion, the district court does not view the evidence in the light most favorable to the Government, but "exercises its own judgment in assessing the Government's case." *Johnson*, 302 F.3d at 150.[2]

## III.   DISCUSSION

In his moving brief, Mr. King argues that a new trial in this case is warranted because (i) Mr. Kirkland's hearsay testimony about an alleged conversation Mr. King had with his deceased wife was highly prejudicial; (ii) Mr. Kirkland's testimony was not credible; and (iii) there was insufficient evidence to sustain a conviction for possession with intent to distribute cocaine.  (Mov. Br. at 2–3).  The Court considers each of Defendant's challenges in turn.

---

[2]     In his moving brief, Mr. King specifically provides that he is making a motion for a new trial pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure.  (Mov. Br. at 1).  Yet, Mr. King also appears to cite to legal authority related to a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29.  (*See id.*).  However, because Mr. King otherwise specifically provides that he is making a motion for a new trial pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure and does not otherwise reference Rule 29 or make any request for a judgment of acquittal, the Court construes Mr. King's motion as being made under Federal Rule of Criminal Procedure 33(a).  Regardless, in reviewing a Rule 29 motion, courts apply "a particularly deferential standard of review, viewing the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence."  *United States v. Silveus*, 542 F.3d 993, 1002 (3d Cir. 2008) (citations omitted) (explaining that this standard governs Rule 29 determinations by the Third Circuit and district courts alike).  A defendant who asserts that there was insufficient evidence to sustain a conviction shoulders "a very heavy burden."  *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997) (quoting *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995)).  The government receives "the benefit of inferences that may be drawn from the evidence, and the evidence may be considered probative even if it is circumstantial."  *United States v. Pecora*, 798 F.2d 614, 618 (3d Cir. 1986).  Credibility conflicts, too, are to be resolved in the government's favor.  *United States v. Scanzello*, 832 F.2d 18, 21 (3d Cir. 1987).  As will be explained below, the Court finds that a new trial is not warranted in this case under Federal Rule of Criminal Procedure 33(a) based on the Court's independent assessment of the Government's case.  *Johnson*, 302 F.3d at 150 (stating that when considering a Rule 33 motion, the district court does not view the evidence in the light most favorable to the Government, but "exercises its own judgment in assessing the Government's case.").  Accordingly, relief under Federal Rule of Criminal Procedure 29 would also be improper, particularly since a Rule 29 analysis would require the Court to view all evidence in the light most favorable to the prosecution.  *See United States v. Mills*, No. 14-0520, 2018 WL 3239796, at *3 (E.D. Pa. July 2, 2018), *aff'd*, 858 F. App'x 463 (3d Cir. 2021) ("[N]o new trial is warranted.  Having so held, there is no need to conduct a separate Rule 29 analysis, which would only be weighted in favor of the government.").

A.        **Testimony of Cooperating Witness**

First, Mr. King argues that a new trial is warranted in this case because the prejudicial effect of Mr. Kirkland's unreliable and uncorroborated testimony far outweighed the probative value of the testimony and thus the testimony should have been precluded pursuant to Federal Rule of Evidence 403.  (Mov. Br. at 3).  As set forth above, the Government's cooperating witness, Mr. Kirkland, testified that sometime around the summer of 2022, his deceased wife had a conversation with Mr. King during which Mr. King proposed to be Mr. Kirkland and his wife's new drug supplier.  (Tr. of Jury Trial Vol. II at 275:1–276:20).  However, Mr. King contends that because Mr. Kirkland's wife died shortly after this alleged conversation took place, no one could verify the veracity of that alleged statement.  (Mov. Br. at 3).  As such, Mr. King maintains that there was no reason the Government should have been allowed to introduce this highly unreliable statement made by a deceased declarant and argues that this unreliable evidence appeared to "mislead the jury especially when there was no evidence presented that Mr. King engaged in drug trafficking activities on the day of the search or his arrest and did not possess any other indicia of drug trafficking such as scales, baggies, containers, pill presses or quantities of cash money."  (*Id.*).  In opposition, the Government contends that Mr. King's arguments regarding the cooperating witness's testimony have all been argued and rejected in prior motion practice.  (Opp. Br. at 4).  More specifically, the Government points out that before trial commenced, it moved *in limine* to allow evidence of Mr. King's prior drug trafficking activities to be admissible under Federal Rule of Evidence 404(b).  (*See id.* (citing D.E. No. 34)).  The Government notes that Mr. King opposed that motion, arguing, among other things, that such evidence would be unduly prejudicial.  (*Id.* (citing D.E. No. 36)).  Nevertheless, the Government notes that the Court ruled that such evidence was admissible pursuant to Rule 404(b), finding that "the Government ha[d] adequately shown

that the probative value of Defendant's prior drug distribution activity is not substantially outweighed by any danger of unfair prejudice." (*Id.* (citing D.E. No. 46)). As such, to the extent that Mr. King is repeating a legal argument already made in prior briefing, the Government contends that the Court has already rejected it. (*Id.*). For the reasons set forth below, the Court agrees with the Government.

As the Government points out (Opp. Br. at 4), before trial commenced in this matter, the Government moved *in limine* to allow evidence of Mr. King's prior drug trafficking activity to be presented at trial under Federal Rule of Evidence 404(b). (*See* D.E. No. 34). The Court granted the Government's motion, and the evidence of Mr. King's prior drug trafficking activity was later admitted at trial in the form of Mr. Kirkland's testimony. (*See* D.E. No. 46). Rule 404(b) prohibits the introduction of "[e]vidence of any other crime, wrong, or act" if that evidence is to be used to prove a person's "character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Third Circuit has developed a four-part test for evaluating the introduction of evidence under Rule 404(b). *United States v. Davis*, 726 F.3d 434, 441 (3d Cir. 2013). Prior-acts evidence is admissible if it is "(1) offered for a proper purpose under Rule 404(b)(2); (2) relevant to that purpose; (3) sufficiently probative under the Rule 403 balancing requirement; and (4) accompanied by a limiting instruction, if requested." *Id.*; *see also Huddleston v. United States*, 485 U.S. 681, 691–92 (1988) (discussing these four requirements). In finding that evidence of Mr. King's prior drug trafficking was admissible under Rule 404(b), the Court first noted that the Government sufficiently showed that it would be offering evidence of Mr. King's drug distribution activity in

the weeks prior to the charged conduct for the proper, non-propensity purposes of showing Mr. King's knowledge, absence of mistake or lack of accident, and intent—that Mr. King possessed the cocaine recovered in the yellow sweatpants at 74 Van Nostrand Avenue knowingly and with the intent to distribute it.  (D.E. No. 46 at 5).  Second, the Court found that the Government met its burden in showing that evidence of Mr. King's drug distribution activity shortly before the charged conduct related to the asserted non-propensity purposes of showing Mr. King's knowledge, absence of mistake or lack of accident, and intent.  (*Id.*).  More specifically, the Court noted that evidence of Mr. King's drug distribution activity shortly before the charged conduct made his knowledge of the presence of the cocaine in the yellow sweatpants more probable than it would be without the evidence, and relatedly that there was an absence of mistake or accident, as it indicated that Mr. King had knowledge of drugs and drug distribution, and thus that it was less likely that he was simply an "innocent go-fer."  (*Id.* at 6 (citing *United States v. Boone*, 279 F.3d 163, 187–88 (3d Cir. 2002))).  Further, the Court noted that to the extent that Mr. King would place his intent to distribute the cocaine at issue in this case, the evidence of Mr. King's drug distribution activity in the weeks prior to the charged conduct would be relevant in establishing whether Mr. King did in fact intend to distribute the cocaine found in the yellow sweatpants.  (*Id.* at 7).  Third, the Court found that the Government had adequately shown that the probative value of Mr. King's prior drug distribution activity was not substantially outweighed by any danger of unfair prejudice.  (*Id.* at 8).  The Court noted that Mr. King's knowledge and intent were crucial elements to the charges against him and would be at issue.  (*Id.*).  Accordingly, the Court emphasized that "when evidence is highly probative, even a large risk of unfair prejudice may be tolerable."  (*Id.*).  Fourth, the Court noted that it could cure any potential prejudice by offering a

limiting instruction as to the proper purposes of such evidence, both at the time the evidence was introduced and during the final charge.  (*Id.* at 9).

To the extent that Mr. King now again argues that the prejudicial effect of Mr. Kirkland's testimony regarding Mr. King's prior drug trafficking activities far outweighed the probative value of the testimony, and thus that the testimony should have been precluded pursuant to Federal Rule of Evidence 403, the Court disagrees and finds no reason to depart from its prior conclusion finding that the probative value of this evidence was not substantially outweighed by any danger of unfair prejudice.  (*Id.* at 8).  Under Rule 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  However, "because Rule 403 only protects against prejudice that is 'unfair,' the 'prejudice against which the law guards' is only 'prejudice of the sort which clouds impartial scrutiny and reasoned evaluation of the facts, which inhibits neutral application of principles of law to the facts as found.'"  *United States v. Walker*, 677 F. App'x 53, 57 (3d Cir. 2017) (quoting *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002)).  Against that backdrop, the Court finds that Mr. Kirkland's testimony was highly probative and its probative value was not substantially outweighed by the danger of unfair prejudice or misleading the jury.  As already discussed, in this case, Mr. King was charged with possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (Indictment at 1).  Therefore, the Government was required to prove, beyond a reasonable doubt, (i) that Mr. King possessed a mixture or substance containing a controlled substance; (ii) that Mr. King possessed the controlled substance knowingly or intentionally; (iii) that Mr. King intended to distribute the controlled substance; and (iv) that the controlled substance was cocaine.  *See* Third Circuit Model

Criminal Jury Instructions 6.21.841A.  In other words, Mr. King's knowledge and intent were crucial elements to the charges against him and were at issue at trial.  (*See, e.g.*, Tr. of Jury Trial Vol. II at 392:21–399:17).  Accordingly, Mr. Kirkland's testimony regarding Mr. King's prior drug trafficking activities in the weeks prior to the charged conduct was highly probative in establishing Mr. King's knowledge and intent.  And as the Third Circuit has emphasized, "when evidence is highly probative, even a large risk of unfair prejudice may be tolerable."  *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002); *see also United States v. Byrd*, No. 17-0299, 2022 WL 2757685, at *1 (W.D. Pa. July 14, 2022).

Further, any prejudice or risk of misleading the jury was cured by the Court's limiting instruction—which was given at the time Mr. Kirkland's testimony was admitted and at the final charge—that any evidence regarding Mr. King's prior drug trafficking activities was to be considered only for the limited purpose of deciding whether Mr. King had the state of mind, knowledge, or intent necessary to commit the crime charged in the Indictment; did not commit the acts for which the Defendant is on trial by accident or mistake; or, was the person who committed the crime charged and not as proof of "bad character or any propensity to commit crimes."  (Tr. of Jury Trial Vol. II at 273:12–274:22 & 365:17–367:1); *see United States v. Graham*, No. 21-0645, 2023 WL 3052727, at *3 (D.N.J. Apr. 24, 2023) (declining to grant defendant new trial based on the fact that the court improperly permitted evidence regarding his arrest for marijuana and other illegal drugs under Rule 404(b) because the probative value of testimony regarding the circumstances surrounding defendant's arrest was probative "and not outweighed by the danger of *unfair* prejudice," and any prejudice was cured by a limiting instruction).

Lastly, to the extent that Mr. King argues that Mr. Kirkland's testimony should have been excluded because it was unreliable and uncorroborated (Mov. Br. at 3), the Court again disagrees.

Such an argument goes to the weight, rather than the admissibility, of Mr. Kirkland's testimony. And in fact, the reliability of Mr. Kirkland's testimony was fairly dealt with by Defense counsel during his cross-examination of Mr. Kirkland.  (Tr. of Jury Trial Vol. II at 277:1–290:16); *see United States v. Soto*, No. 20-0903, 2023 WL 334537, at *2 (D.N.J. Jan. 20, 2023) (declining to grant defendant new trial based on the fact that certain photographs were inadmissible under Federal Rule of Evidence 403 where defendant adequately addressed his claims of unreliability of those photographs through cross-examination).  As such, the Court finds that Mr. Kirkland's testimony was properly admitted at trial and that Mr. King will not be granted a new trial based on his argument that the prejudicial effect of Mr. Kirkland's testimony far outweighed the probative value of the testimony and thus should have been precluded pursuant to Federal Rule of Evidence 403.  *See, e.g.*, *United States v. Rembert*, No. 21-0247, 2024 WL 2864035, at *18 (E.D. Pa. June 6, 2024) (declining to grant defendant a new trial based on the fact that certain testimony was inadmissible under Federal Rule of Evidence 403 where the testimony was probative and not unfairly prejudicial).[3]

## B.     Credibility of Cooperating Witness

Second, Mr. King argues that a new trial is warranted in this case because Mr. Kirkland's testimony was not credible.  (Mov. Br. at 3).  Specifically, Mr. King points out that Mr. Kirkland's

---

[3]     In his moving brief, Mr. King suggests Mr. Kirkland's testimony regarding Mr. King's prior drug trafficking activities was "[h]earsay." (Mov. Br. at 3).  As the Government points out, before trial commenced in this matter, the Government moved *in limine* to admit Mr. Kirkland's testimony regarding what his deceased wife told him—namely, that Mr. King had proposed to Mr. Kirkland's wife that Mr. King join their drug trafficking arrangement by providing his drug supply for them to sell—by arguing, among other things, that such testimony fell within the excited utterance exception to the hearsay rule.  (*See* Opp. Br. at 4 (citing D.E. No. 48)).  After the Government filed its motion, the Court held a hearing pursuant to Federal Rule of Evidence 104 to determine whether Mr. Kirkland's testimony regarding what his deceased wife told him fell within any exception to the hearsay rule, and ultimately decided that the testimony fell within the excited utterance exception to the hearsay rule and was admissible under Federal Rule of Evidence 803(2).  (Tr. of Jury Trial Vol. I at 206:3–233:25).  Mr. King provides no argument as to why the Court's conclusion was improper.  As such, to the extent Mr. King suggests Mr. Kirkland's testimony was inadmissible hearsay, the Court disagrees and relies on its prior finding that Mr. Kirkland's testimony regarding what his deceased wife told him fell within the excited utterance exception to the hearsay rule and was admissible under Federal Rule of Evidence 803(2).  (*Id.* at 229:15–233:25).

testimony was unreliable because Mr. Kirkland was a cooperating witness facing a maximum 40 years in prison, and as such was seeking the direct benefit of probation from the Government in rendering his testimony.  (*Id.*).  Further, Mr. King contends that Mr. Kirkland's testimony was not credible because Mr. Kirkland could not even remember the month in which Mr. King's conversation with Mr. Kirkland's deceased wife occurred, did not even know Mr. King at the time of the alleged conversation, and there were no other persons who could corroborate the story.  (*Id.* (citing Tr. of Jury Trial Vol. II at 287:3–289:5)).  Accordingly, Mr. King argues that because the testimony of Mr. Kirkland was unreliable and uncorroborated, it cannot serve as the basis for a conviction and any conviction based on such testimony is against the weight of the evidence such that a new trial must be ordered.  (*Id.*).  In opposition, the Government contends that to the extent Mr. King is repeating a factual argument regarding the credibility of the witness's testimony that he made to the jury, the jury has already rejected it.  (Opp. Br. at 4).  Accordingly, the Government argues that the Court should reject Mr. King's attempt to relitigate the trial.  (*Id.*).  The Court agrees with the Government.

It is the responsibility of the jury to determine credibility of witnesses and "to decide whether or not to believe [the] testimony."  *United States v. Salahuddin*, 765 F.3d 329, 346 (3d Cir. 2014).  In fact, as the Third Circuit has noted, when a jury has heard evidence about a witness' motivations, potential biases, or inconsistencies, it is their responsibility—not the Court's—to decide whether or not to believe the witness' testimony.  *Id.*  As such, cross-examination, closing arguments, and jury instructions regarding the motivations of a cooperating witness and potential bias are the means by which jurors are provided with information and instruction to allow them to make relevant credibility assessments.  *Id.*  In this case, the jury heard details about Mr. Kirkland's cooperation agreement with the Government both on direct and cross-examination, which

indicated that Mr. Kirkland was hoping to reduce his potential sentence on federal drug charges—for which he could be facing up to forty years in prison—by cooperating with the Government in this case.  (*See* Tr. of Jury Trial Vol. II at 266:24–269:20 & 283:20–284:6 & 287:3–288:11).  Further, the jury heard Defense counsel's closing statement and his cross-examination of Mr. Kirkland—all of which highlighted biases, motivations, and the unreliability of Mr. Kirkland's testimony.  (*Id.* at 277:2–289:7, 290:6–16 & 397:17–398:12).  The jury also heard the Court's instructions that cooperating witness agreements could be considered in assessing witness credibility.  (*Id.* at 364:1–17).  As such, the jury was made aware of Mr. Kirkland's motivations, potential biases, and unreliability.  The jury nevertheless found Mr. King guilty.  Under these circumstances, it is not the Court's role to interfere with the jury's credibility determinations as they relate to Mr. Kirkland's testimony, and Mr. King's motion for a new trial on this basis is therefore denied.  *See Salahuddin*, 765 F.3d at 346 ("The majority of Cooper's arguments amount to challenges to Mazzocchi's credibility and motives . . . We can entirely reject these arguments, as the jury was made aware—through cross-examination, closing arguments, and the jury instructions—of Mazzocchi's motivations, potential bias, and inconsistent testimony."); *United States v. McIntyre*, 612 Fed. App'x. 77, 80 (3d Cir. 2015) ("McIntyre's argument that two of the witnesses had credibility problems is equally unavailing.  Defense counsel explored those issues at trial, and how the jury resolved the questions counsel raised was a matter reserved to its judgment.").

### C.    Sufficiency of Evidence

Third, Mr. King argues that a new trial in this case is warranted because there was insufficient evidence to sustain a conviction for possession with intent to distribute cocaine.  (Mov. Br. at 2).  More specifically, Mr. King contends that in this case, the Government's evidence fails

to show that Mr. King actually possessed the cocaine that was found in the yellow sweatpants at 74 Van Nostrand Avenue or was engaged in any drug trafficking activity.  (*Id.*).  Mr. King argues that he was arrested days later and did not have the cocaine on his person.  (*Id.*).  In fact, he asserts that "the evidence presented in court and more specifically, the body w[o]rn camera of Officer Sanchez, establishes that there were other individuals in the residence where the cocaine was found including Mr. Payne and Ms. King's son."  (*Id.*).  Moreover, Mr. King argues that there was no evidence that Mr. King had sold controlled dangerous substances on the day of the search or was otherwise engaged in the sale of narcotics.  (*Id.*).  Accordingly, Mr. King contends that his conviction for possession with intent to distribute cocaine defies logic and must be set aside.  (*Id.*).  In opposition, the Government contends that it introduced significant evidence that Mr. King controlled the bag of cocaine that was confiscated from the yellow sweatpants and had the requisite intent to distribute that cocaine.  (Opp. Br. at 3).  Further, though Mr. King contends that there was no evidence that he was engaged in drug trafficking activity, the Government contends that proving Mr. King's involvement in drug trafficking was not an element of the crime of conviction and thus was not necessary for the Government to prove.  (*Id.*).  Finally, the Government argues that although Mr. King points out that there were other individuals in the residence where the cocaine was found, the jury was made aware of such evidence and clearly rejected it.  (*Id.*).  As such, the Government maintains that Mr. King is not entitled to a new trial.  (*Id.*).  For the reasons set forth below, the Court agrees with the Government.

If a defendant seeks a new trial on the ground that the verdict was contrary to the weight of the evidence, a court should order a new trial "only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Johnson*, 302 F.3d at150 (quoting *Santos*, 20 F.3d at 285).  Therefore, "[m]otions for a new trial

based on the weight of the evidence are not favored." *Derricks*, 810 F.2d at 55.  In deciding whether the weight of the evidence supports the conviction, the Court looks first to the elements of the charged offense.  *See Brennan*, 326 F.3d at 190.  As already discussed, in this case, Mr. King was charged with possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  (Indictment at 1).  Therefore, the Government was required to prove, beyond a reasonable doubt, (i) that Mr. King possessed a mixture or substance containing a controlled substance; (ii) that Mr. King possessed the controlled substance knowingly or intentionally; (iii) that Mr. King intended to distribute the controlled substance; and (iv) that the controlled substance was cocaine.  *See* Third Circuit Model Criminal Jury Instructions 6.21.841A.

Here, in arguing that there was insufficient evidence to sustain a conviction for possession with intent to distribute cocaine, Mr. King first argues that the Government's evidence failed to show that Mr. King actually possessed the cocaine that was found in the yellow sweatpants at 74 Van Nostrand Avenue and points out that Mr. King was arrested days later and did not have the cocaine on his person.  (Mov. Br. at 2).  This argument does not warrant a new trial.  As both Mr. King and the Government acknowledge, to prove that Mr. King possessed a controlled substance, the Government did not have to show that Mr. King physically held the controlled substance, that is, had actual possession of it.  (Mov. Br. at 2; Opp. Br. at 3).  Rather, as the Third Circuit Model Criminal Jury Instructions provide, as long as the controlled substance was within the defendant's control, he possessed it.  Third Circuit Model Criminal Jury Instructions 6.21.841-1.  In other words, if the defendant either had actual possession of the controlled substance or had the power and intention to exercise control over it, even though it was not in his physical possession—that is, that the defendant had the ability to take actual possession of the substance when the defendant wanted to do so, such facts are sufficient to show that the Government has proved possession.  *Id.*;

*see also United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008) ("'[C]onstructive possession requires an individual to have the power and intent to exercise both dominion and control over the object he or she is charged with possessing.'  Constructive possession may be proved by circumstantial evidence." (citations omitted)).  And here, the evidence presented at trial was sufficient for a jury to find that the bag of cocaine that was found in the yellow sweatpants at 74 Van Nostrand Avenue was within Mr. King's control.  More specifically, as already recounted above, the cocaine that was confiscated from 74 Van Nostrand Avenue was located within a pair of men's yellow sweatpants that specifically matched the yellow sweatshirt that Mr. King had been observed wearing earlier that evening.  (Tr. of Jury Trial Vol. I at 148:5–23).  And evidence at trial revealed that the yellow sweatpants were stained with blood that was later confirmed to contain Mr. King's DNA.  (Tr. of Jury Trial Vol. II at 291:18–313:15).  Further, during the search of the Van Nostrand Avenue residence, Officer Gary Hauman identified a mailing document that had been addressed to Mr. King at 74 Van Nostrand Avenue, further linking Mr. King to the residence in which the yellow sweatpants and cocaine were found.  (Tr. of Jury Trial Vol. I at 152:24–153:4 & 170:17–25).  In addition, as recounted above, evidence at trial revealed that Mr. King was located in the vicinity of 74 Van Nostrand Avenue shortly before the search warrant at that residence was executed.  (*Id.* at 124:21–133:18).  In fact, Sergeant Macaluso testified that when he arrived at 74 Van Nostrand Avenue to execute the search warrant at that residence, he observed the same white Hyundai into which Mr. King had been observed entering about twenty minutes before, double parked in front of the residence.  (*Id.* at 134:2–10).  And, according to Sergeant Macaluso, if Mr. King or the white Hyundai had continued past 74 Van Nostrand Avenue, an officer would have been positioned to observe Mr. King's movements and would have alerted other law enforcement agents of that movement.  (*Id.* at 132:22–133:15).  Yet, Sergeant Macaluso

testified that no officer observed the white Hyundai or Mr. King proceed past 74 Van Nostrand Avenue, further indicating that Mr. King was in the vicinity of the residence.  (*Id.* at 133:16–18). Accordingly, the evidence adduced at trial not only linked Mr. King to the residence in which the cocaine was found, but also to the yellow sweatpants in which the cocaine was specifically located. Further, Defense counsel thoroughly examined the perceived deficiencies in the Government's evidence through cross-examination of witnesses and the presentation of opening statements and closing arguments.   After drawing all reasonable and logical inferences from the evidence presented based on an independent assessment of the Government's case, the Court does not believe that an innocent person has been convicted and finds that no miscarriage of justice has occurred based on the fact that the Government's evidence allegedly failed to show that Mr. King actually possessed the cocaine that was found in the yellow sweatpants at 74 Van Nostrand Avenue.

Further, to the extent that Mr. King argues that the presence of other individuals in the vicinity of the residence where the cocaine was found casts doubt on the notion that Mr. King possessed the cocaine, the Court disagrees.  As the Government points out (Opp. Br. at 3), the jury was made aware during closing arguments that the body worn camera of Officer Sanchez, another officer present at the scene when the Von Nostrand residence was being searched, indicated that there were other individuals in the vicinity of the residence at 74 Van Nostrand Avenue when the search warrant was being executed.   (Tr. of Jury Trial Vol. II at 394:2–396:6).   The jury nevertheless found Mr. King guilty.   Under these circumstances, it is not the Court's role to interfere with the jury's credibility determinations and Mr. King's motion for a new trial on this basis is therefore denied.  *See Salahuddin*, 765 F.3d at 347 ("Through these arguments, Cooper asks us to look one-sidedly at small, isolated portions of the record to conclude that the verdict

was against the weight of the evidence.  But when each instance he raises is placed in the proper context, it becomes clear that ample evidence—albeit sometimes circumstantial—supported the conspiracy.").

Next, in arguing that there was insufficient evidence to sustain a conviction for possession with intent to distribute cocaine, Mr. King contends that the Government's evidence fails to show that Mr. King was engaged in any drug trafficking activity.  (Mov. Br. at 2).  Mr. King argues that there was no evidence that Mr. King had sold controlled dangerous substances on the day of the search or was otherwise engaged in the sale of narcotics.  (*Id.*).  Accordingly, Mr. King contends that his conviction for possession with intent to distribute cocaine defies logic and must be set aside.  (*Id.*).  This argument does not warrant a new trial.  As an initial matter, though Mr. King contends that there was no evidence that he was engaged in drug trafficking activity, as the Government points out (Opp. Br. at 3), proving Mr. King's involvement in drug trafficking was not an element of the crime of conviction and thus was not necessary for the Government to prove. *See* Third Circuit Model Criminal Jury Instructions 6.21.841A.  Nevertheless, to the extent that Mr. King attempts to argue that there was insufficient evidence to show that Mr. King intended to distribute the cocaine confiscated from the yellow sweatpants, the Court again disagrees based on the evidence that was adduced at trial.  To start, Sergeant Macaluso testified that from his experience in narcotics investigations, the amount of cocaine that was located in the yellow sweatpants was consistent with distribution weights.  (Tr. of Jury Trial Vol. I at 148:21–25 & 151:8–152:15).  Detective Keith Colon of the Jersey City Police Department likewise testified that, based on his experience from working in narcotics investigations, the quantity of cocaine recovered in the yellow sweatpants far exceeded any weight of cocaine that would be kept for personal use alone.  (*Id.* at 194:25–195:6).  Further, as already discussed, Mr. Kirkland testified to

Mr. King's drug trafficking activity by telling the jury that Mr. King had his own drug supply and offered—prior to July 8, 2022—to participate in a drug trafficking arrangement with Mr. Kirkland and his now deceased wife.  (Tr. of Jury Trial Vol. II at 275:1–276:20).  Further, Defense counsel thoroughly examined the perceived deficiencies in the Government's evidence through cross-examination of witnesses and the presentation of opening statements and closing arguments.  After drawing all reasonable and logical inferences from the evidence presented based on an independent assessment of the Government's case, the Court does not believe that an innocent person has been convicted and finds that no miscarriage of justice has occurred based on the argument that the Government's evidence failed to show that Mr. King was engaged in any drug trafficking activity.

The Third Circuit has cautioned that weight-of-the-evidence motions for a new trial are "not favored" and should be granted "sparingly and only in exceptional cases."  *Salahuddin*, 765 F.3d at 346.  This is simply not such a case.  Accordingly, the Court will deny Mr. King's motion for a new trial.

## IV.    CONCLUSION

Based on the foregoing, Defendant's motion (D.E. No. 62) is **DENIED**.  An appropriate Order follows.

Dated: July 29, 2024                                                            *s/ Esther Salas*
                                                                                                  **Esther Salas, U.S.D.J.**